Donald R. CAMPBELL and Patricia A. Campbell, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 87–1892.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 11, 1988.

Decided Feb. 23, 1989.

As Modified on Grant of Rehearing May 24, 1989.

John P. Konvalinka (argued), Grant, Konvalinka & Grubbs, P.C., Mary Elizabeth McCroskey, Chattanooga, Tenn., for petitioners-appellants.

William F. Nelson, Chief Counsel, IRS, Gary R. Allen, Chief, Appellate Section, Acting Asst. Atty. Gen., Tax Div., Dept. of Justice, Jonathan S. Cohen, John J. Boyle (argued), Washington, D.C., for respondent-appellee.

Before MERRITT and RYAN, Circuit Judges; and POTTER, District Judge.*

---

* The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation.

MERRITT, Circuit Judge.

The primary issue in this tax case is whether a partnership, which buys an airplane and leases it to a corporation controlled by the partners, for the purpose of generating a profit in the corporation, is engaged in an activity for profit under § 183 of the Internal Revenue Code, 26 U.S.C. § 183 (1988).[1] Here, the shareholders of the corporation were substantially the same as the partners, and the airplane was the partnership's only asset. The partners contributed little or no capital to the partnership venture, and the partnership generated significant tax losses. The Tax Court held that under such circumstances, the leasing activity was not engaged in for profit. Therefore, the Tax Court disallowed the taxpayer's deductions for ordinary business losses generated by the partnership and for the investment tax credit resulting from the purchase of the airplane by the partnership, and the Tax Court assessed a penalty against the taxpayers for nonpayment of taxes. We conclude that the relationship between the partnership and the corporation established the requisite profit motive, and we reverse. We would point out that no question of allocation of income, deductions or credits between the partnership and the corporation is raised by the parties in this appeal. See 26 U.S.C. § 482 (1988) ("allocation of income and deductions among taxpayers").

I.

Donald R. Campbell, the taxpayer,[2] was employed as a psychiatrist by the Area Psychological Clinic ("Clinic") in Chattanooga, Tennessee at all times relevant herein. In addition to his affiliation with the Clinic, Campbell was a shareholder in Health Care Corporation ("HCC") whose principal place of business was Chattanooga, Tennessee. HCC was formed to invest in and develop psychiatric health care facilities. It did so successfully and was later sold to Hospital Corporation of America at a substantial profit for its investors.

In furtherance of its business, HCC officers and employees engaged in extensive air travel. In 1978, following deregulation of the airline industry, air service to Chattanooga was substantially curtailed. Recognizing the need for air transportation of HCC officers and employees and the general public, the shareholders of HCC formed Health Air Partnership. Health Air purchased its only asset, a 1979 Beechcraft airplane from Hangar One, Inc. for $710,315.78. The partnership put $68,615.78 down and financed the balance. Each partner also executed full recourse promissory notes for the entire balance.

Health Air leased the airplane to HCC. Under the lease, HCC was obliged to pay Health Air rental, repairs, insurance, taxes and maintenance, and HCC had the right of first refusal on the day-to-day use of the plane. Health Air also leased the airplane to Hangar One, Inc., a "fixed base" operator for servicing and charter of general aviation aircraft. Hangar One was obliged to pay Health Air at a specified rate for a minimum of 240 hours per year of flight utilization reduced by the number of hours Hangar One could not use the plane due to Health Air's own use.

The partnership advertised the availability of the plane by word of mouth. Hangar One also attempted to market the plane. From July through December of 1979, the plane was utilized a total of 340.2 hours—approximately 8% by Hangar One, 77% by HCC, and 15% by nonrelated parties located directly through Health Air.

The accounting books and records of Health Air were maintained by HCC personnel and prepared from records of Hangar One. Accounts between HCC and Health Air were tracked by means of a credit/debit system.

---

1. § 183. Activities not engaged in for profit. (a) General rule.—In the case of an activity engaged in by an individual ..., if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter....

2. Donald Campbell's wife, Patricia, is also a party to this action, solely by virtue of having filed a joint return with her husband in 1979.

For 1979, the partnership reported gross receipts of $95,325 and deductions totalling $173,056, claiming an ordinary business loss of $77,730. The basic numbers for the partnership for 1979–83 are:

|  | 1979 | 1980 | 1981 | 1982 |
|---|---|---|---|---|
| Gross Rec. | 95,325.89 | 115,111.42 | 122,106.73 | (20,965.37) |
| Deprecia'n | (95,763.31) | (164,165.67) | (117,261.19) | –0– |
| Interest | (18,509.71) | ( 42,244.61) | ( 39,338.59) | (36,038.64) |
| Other Ded'n | (58,783.64) | (142,744.23) | (193,088.02) | (13,002.61) |
| Income/Loss | (77,730.77) | (234,043.09) | (227,581.07) | (70,006.62) |

These losses were in part paper losses and in part due to the dramatic rise in the cost of fuel, inflation, and increased interest rates occurring during the late 1970's and early 1980's. Campbell claimed his distributive share of these losses and of the investment tax credit resulting from the purchase of the airplane on his 1979 calendar year tax return.

■ Section 183 provides that taxpayers may not fully deduct losses from an activity unless it is "engaged in for profit." 26 U.S.C. § 183(a). An activity is engaged in for profit if the taxpayer entertained an actual and honest, even though unreasonable or unrealistic, profit objective in engaging in the activity. Treas.Regs. § 1.183–2(a). In determining whether such a profit motive exists, a court must consider the objective facts and must also look to nine general factors set out in the Treasury Regulations.[3] For our purposes, the taxpayer is the partnership. It is the partnership motive that is relevant. *See, e.g., Polakof v. Commissioner*, 820 F.2d 321 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988); Rev.Rul. 79–300, 1979—2 C.B. 112; Rev.Rul. 77–320, 1977–2 C.B. 78. Additionally, "profit" means economic profit independent of tax consequences. *See Ronnen v. Commissioner*, 90 T.C. 74 (1988); *Herrick v. Commissioner*, 85 T.C. 237, 255 (1985).

Without any review of the prescribed factors, the Tax Court simply found that the sole motivation of the partnership for engaging in the airplane leasing activity was to provide HCC with air transportation while at the same time generating paper losses for the Health Air partners to offset their substantial incomes. The Tax Court based its conclusion concerning the lack of a profit motive on Health Air's history of losses and the close relationship between HCC and Health Air. The Tax Court's holding and reasoning are in error in several respects.

■ First, the Tax Court erred in its reliance on the close relationship between Health Air and HCC as determinative of the lack of profit motive. The Tax Court reasoned that the primary purpose of the operation of the plane by Health Air was to provide transportation to HCC employers and officers so that the corporation could profit and that this purpose was not a "business purpose" for Health Air. *Campbell v. Commissioner*, T.C. Memo 1986–569 at 28 (Nov. 26, 1986). To support its conclusion, the Tax Court noted that the Health Air partners were also HCC stockholders, that the plane was used predominantly by HCC, that funds from HCC paid the notes and operating expenses of the plane and that HCC employees maintained the "informal" accounting system used by Health Air. *Id.* at 26–27. The Tax Court overlooked the numerous authorities holding that an individual may arrange his affairs in order to use his assets to make a profit in a corporation and that such economic arrangements do not require an "either-one-or-the-other" profit motive. The profit motive in these cases need not be isolated and attributed to just the individual or to just the corporation. The entire

---

**3.** The nine relevant factors are as follows:
(1) the manner in which the taxpayer carried on the activity;
(2) the expertise of the taxpayer or his advisors;
(3) the time and effort expended by the taxpayer in carrying on the activity;
(4) the expectation that assets used in the activity may appreciate in value;
(5) the success of the taxpayer in carrying on similar or dissimilar activities;
(6) the taxpayer's history of income or loss with respect to the activity;
(7) the amount of occasional profit, if any, which is earned;
(8) the financial status of the taxpayer; and
(9) whether the elements of personal pleasure or recreation are involved.
Treas.Regs. § 1.183–2(b). No one factor is controlling. *Id.*

economic relationship and its consequences are what determine profit motive.

In *Horner v. Commissioner*, 35 T.C. 231 (1960), for example, the taxpayer in his individual capacity, purchased merchandise and resold it through a corporation of which he was president, general manager and a major shareholder. When the corporation became insolvent and no longer able to repay him for the merchandise purchased, the taxpayer was held personally liable to the manufacturer therefor. The court allowed the taxpayer's loss deduction for its payment to the manufacturer reasoning:

> If one enters into the activity of furnishing a corporation with goods to sell, upon his own credit, with the expectation of deriving gain when the goods are sold he certainly is engaging in a transaction entered into for profit. In this case, the expectation was that the profits would come to Horner either as salary as president and general manager, from dividends on his stock, or as an increase in the value of his stock.

*Id.* at 236.

Similarly, in *Lee v. Commissioner*, 51 T.C.M. 1438 (1986), a taxpayer who purchased a sea plane with personal funds with the intent of allowing a corporation he owned to use it and in anticipation that the corporation would realize a profit from its use was found by the court, relying on *Horner*, to have a bona fide profit motive in operating the seaplane. In *Louismet v. Commissioner*, 43 T.C.M. 1496 (1982), where the principal user of the taxpayer's charter aircraft service was a commodities business in which the taxpayer held a substantial ownership interest, the court found that the taxpayer's intention to profit from the commodities business established his profit motive in the air charter business. Finally, in *Cornfeld v. Commissioner*, 797 F.2d 1049 (D.C.Cir.1986), the court found that a taxpayer who leased his airplane to an aircraft charter service of which he was a stockholder had an honest profit objective in so doing.

Similarly, in this instance, the close relationship between HCC and Health Air establishes rather than negates Health Air's profit motive. Each partner of Health Air was a shareholder of HCC. Thus, each partner, although not directly profiting from HCC's use of the plane, benefited through dividends and a very large increase in stock value at the time of sale of the company. Presumably, these corporate distributions and capital gains were taxed in the hands of the shareholder-partners. The profits generated by HCC through use of the Health Air plane, therefore, made the venture an activity engaged in for profit under the *Horner* case rationale.

The Internal Revenue Service argues that since the partnership as an entity was not an HCC shareholder and could not directly receive the benefits of HCC dividends, salaries or increased stock value, the increased profitability of HCC could not evidence a partnership profit motive. This argument makes a distinction without a difference. A general partnership such as Health Air, is organized in such a way that any benefits or profits realized by the general partnership automatically pass through to the Health Air partners. Any contemplated increase in wealth for the group of HCC stockholders acting in partnership is an increase in wealth for the individuals caused by their joint action as partners. The profit of the corporation increased the wealth of the individuals. This increase, which was presumably taxed in due course, was accomplished through the use of transportation and communication efficiencies provided by the partnership airplane. The IRS would tax the profits and capital gains from the corporation—gains attributable in part from the use of the airplane—while denying deductions to the stockholder-partners attributable to the use of the airplane.

The cases cited by the IRS are inapposite. *See, e.g., Polakof v. Commissioner*, 820 F.2d 321 (9th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988); *Tallal v. Commissioner*, 778 F.2d 275 (5th Cir.1985); *Brannen v. Commissioner*, 722 F.2d 695 (11th Cir.1984). They involve situations in which courts have refused to look to the actions of limited part-

ners in a limited partnership but look to actions of the general partner to establish or negate profit motive. It is well settled that the general partner and the limited partners have differing ownership interests, liability and involvement in a limited partnership venture. The distinction based on limitations of liability may be valid in some situations. It does not apply here.

■ Second, in concentrating on the partnership's "substantial losses" to establish its lack of profit motive, the Tax Court failed to consider the substantial increase in fuel costs, inflation and interest rates which occurred soon after Health Air began operation. These changes in the economy significantly affected the profitability of the Health Air operation standing alone. Indeed, this effect is evidenced in part by the marked increase in losses incurred by Health Air—from $77,730.77 in 1979 to $234,043.09 in 1980 and $227,581.07 in 1981 —during its years of operation.

Third, in emphasizing the partnership's history of losses, the Tax Court discounted the fact that Health Air realized a substantial profit in 1984. The Tax Court reasoned that this profit was due to the sale of the airplane in 1984 and arose solely because high depreciation deductions had been taken by the partnership in previous years. In looking to the losses generated by the partnership in prior tax years, the Tax Court considered mainly the tax or paper losses— those due specifically to depreciation—not cash flow, economic losses or economic gains realized from the corporation by the partners. On the other hand, however, when considering profits generated by the partnership, the Tax Court refused to consider tax profits, instead indicating that economic profit should be demonstrated. Such treatment by the Tax Court is inconsistent and would allow the government to tax the paper profit but disallow the paper deductions from the same operation. The Tax Court cannot have it both ways.

## II.

■ The second issue for our consideration is whether amounts advanced to Campbell by the Clinic during 1979 are nontaxable loans or taxable compensation. The Clinic paid Campbell a salary and maintained an open-ended drawing account for him. In 1979, $32,580.78 for personal expenses was charged to Campbell's drawing account. This amount was not reported by Campbell on his 1979 tax return.

On its November 1, 1978 to October 31, 1979 fiscal year tax return, however, the Clinic reported $24,546.92 as "other loans." On its fiscal year 1980 tax return, the Clinic reported $67,060.70 as "other loans."

No contemporaneous notes for the amounts advanced were executed by Campbell. On October 31, 1980, upon leaving the employ of the Clinic, Campbell executed a promissory note to the Clinic in the amount of $48,571.

The Tax Court found that $24,546.92 of the $32,580.78 advanced to Campbell was a non-taxable loan. In so holding, the Tax Court relied on the stipulation by the parties that this amount was not deducted by the Clinic but listed on its 1979 fiscal year tax return as "other loans." The taxpayer contended in his objection to respondent's computation and now urges on appeal that the Tax Court erred by failing to also recognize the remaining $8,033.86, allegedly advanced to the taxpayer between November 1, 1979 and December 31, 1979, as a non-taxable loan. This result, the taxpayer argues, is supported by the designation of $67,060.70 as "other loans" on the Clinic's 1980 fiscal year tax return, by the Clinic's Trial Balances for October and December 1980 and by the exhibit reflecting the expenses paid by the Clinic on behalf of Campbell during 1979. The Tax Court found, however, and we agree, that the evidence cited by Campbell does not establish that the remaining $8,033.86 was loaned to Campbell rather than paid to him as compensation. Indeed, this evidence does not even show that $8,033.86 of the $67,060.70 "other loans" amount was advanced to Campbell nor even that $8,033.86 was advanced to Campbell during November and December of 1980. We, therefore, affirm the Tax Court on the loan vs. compensation issue.

## III.

The third issue before us is the question of whether the partnership is entitled to an investment tax credit for its purchase of the airplane under § 46(e)(3)(B) of the Internal Revenue Code, 26 U.S.C. § 46(e)(3)(B) (1988).[4] To qualify for a § 46 tax credit, the partnership as a noncorporate lessor, must show that the term of the lease to HCC including options to renew, was less than 50% of the useful life of the airplane and that § 162 deductions (generally, operating expenses) allowable to it exceeded 15% of the rental income produced by the airplane during the first year of the lease. 26 U.S.C. § 46(e)(3)(B); Treas. Regs. §§ 1.46–4(d)(1)(ii) and 3(ii). The Tax Court held that it was not required to reach the investment tax credit question since Health Air did not satisfy the eligibility requirement of engaging in a trade or business. Further, the Tax Court held that even if Health Air was engaged in the trade or business of leasing an airplane, it had not shown that its § 162 deductions exceeded 15% of its rental income.

Taxpayer urges that Health Air is a trade or business, has met all three § 46(e)(3)(B) requirements and should, therefore, be allowed the investment tax credit. The IRS, on the other hand, argues that if Health Air is found to be a trade or business, the cause should be remanded for consideration of whether the § 46 elements are satisfied. Specifically, the Commissioner argues that a factual question exists as

to the term of the lease, since the lease termination date, June 30, 1982, was inserted after the lease was executed. Additionally, the Commissioner argues that a factual question also exists as to whether the § 162 expenses claimed by the partnership were in fact paid by the partnership or by the corporation.

We have already found that Health Air is a trade or business. It has, thus, satisfied the first hurdle to investment tax credit entitlement. We further find that the record is unclear as to the term of the Health Air–HCC lease and as to attribution between Health Air and HCC of § 162 expense deductions claimed by Health Air. Moreover, we find no guidance in the Tax Court's conclusory declaration that "[p]etitioners have totally failed to show that deductions with respect to the airplane allowable 'solely by reason of section 162' exceed 15% of the rental income." *Campbell*, T.C. Memo 1986–569 at 29–30, quoting 26 U.S.C. § 46(e)(3)(B). We, therefore, remand this issue to the Tax Court to decide the partnership's entitlement to the investment tax credit.

## IV.

The final issue for our review is the propriety of the Tax Court's assessment of a penalty against taxpayers for negligence and/or fraud under § 6653(a) of the Internal Revenue Code, 26 U.S.C. § 6653(a)(1) (Supp.1988).[5] Based on our disposition of

---

**4.** § 46. Amount of credit
   (e) Limitations with respect to certain persons.—
     (3) Noncorporate lessors.—A credit shall be allowed ... to a person which is not a corporation with respect to property of which such person is the lessor only if—

   .    .    .    .    .

     (B) The term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property....

**5.** § 6653 Additions to tax for negligence and fraud
   (a) Negligence
     (1) In general.—If any part of the underpayment ... is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to the sum of—
       (A) 5% of the underpayment, and
       (B) an amount equal to 50 percent of the interest payable under § 6601 with respect to the portion of such underpayment which is attributable to negligence for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax)....
     (3) Negligence.—For purposes of this subsection, the term "negligence" includes any fail-

the issue above, we reverse the Tax Court's assessment of the § 6653 penalty for the underpayment resulting from its finding that the taxpayers were negligent in claiming the Health Air loss deductions. We leave for Tax Court determination, in accordance with its decision on the substantive issue, the propriety of assessing a penalty for the claiming of the investment tax credit.

Accordingly, we affirm in part and reverse in part, and remand this cause to the Tax Court for further proceedings in accordance with this opinion.

JOHN W. POTTER, District Judge, dissenting.

I respectfully dissent from the majority opinion as to parts I and III, and from the majority's conclusion that there should be no assessment of a penalty against taxpayers for negligence and/or fraud under § 6653(a) of the Internal Revenue Code, 26 U.S.C. § 6653(a)(1) on the assessment for the underpayment resulting from the Health Air loss deductions.

As to part I, dealing with 26 U.S.C. § 183, the Tax Court made the following finding:

> We conclude that Health Air partnership was not in the trade or business of leasing an airplane and its activity was an activity "not engaged in for profit" within the meaning of section 183.

The interplay of Section 162 and Section 183 is explained as follows by Justice Kennedy, then Judge Kennedy, in *Independent Electric Supply, Inc. v. Commissioner*, 781 F.2d 724, 727 (9th Cir.1986):

> While it is true that I.R.C. section 183 itself does not come into play until after it is determined that an activity is not engaged in for profit, the courts have relied on the section 183 factors in conducting the profit motive analysis under section 162. *Brannen*, 722 F.2d at 704. This list is nonexclusive, *id.*, and the assessment of motivation is made after

considering all the facts and circumstances of each case, Treas.Reg. § 1.183–2(a) (1972); *see Hirsch* [*v. Commissioner*], 315 F.2d [731] at 737 [9 Cir.1963].

The standard for review is whether or not the Tax Court's finding is clearly erroneous. *Polakof v. Commissioner*, 820 F.2d 321 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988); *Tallal v. Commissioner*, 778 F.2d 275 (5th Cir.1985); *Brannen v. Commissioner*, 722 F.2d 695 (11th Cir.1984).

Based on the record, the finding of the Tax Court was not clearly erroneous. This court posed to the parties at oral argument on appeal the question whether a profit motive was established because the Partnership's airplane leasing activity, by benefiting the Corporation, would increase the individual partners' profits as shareholders of the Corporation. Relying on *Horner v. Commissioner*, 35 T.C. 231 (1960); *Lee v. Commissioner*, 51 T.C.M. 1438 (1986); *Louisment v. Commissioner*, 43 T.C.M. 1496 (1982); and *Cornfeld v. Commissioner*, 797 F.2d 1049 (D.C.Cir.1986), the majority finds that the expection of future profits to be generated by HCC made the partnership undertaking an activity engaged in for profit. While the majority refers to other factors, it appears to tilt the decision on a permutable profit motive.

First, I respectfully suggest that the cases cited above have different scenarios. Particularly in the *Horner* case, the situation was characterized as a joint venture with the taxpayer and the corporation. The asset or activity in those cases played a major role in the success of the other business entity. In the case sub judice, providing corporate transportation was peripheral.

Looking at profit motive, appellee contends that the existence of a profit motive under § 183 must be determined at the partnership level. See *Brannen*, 722 F.2d 695; *Tallal*, 778 F.2d 275; *Polakof*, 820 F.2d 321. The majority points out that these cases deal with limited partnerships;

---

ure to make a reasonable attempt to comply with the provisions of this title, and the term

"disregard" includes any careless, reckless or intentional disregard.

however, the appellants and the majority agree that the taxpayer is the partnership and the analysis as to whether the activity was engaged in for profit must be made with regard to the partnership.

Without piercing the partnership "veil," it is apparent that the Partnership, which held title to the airplane, was not a shareholder of the corporation. It could not expect any profits in the form of salaries or dividends. The testimony of Mr. Abercrombie, one of the partners, was that the objective of the Partnership and the Corporation was totally different. Health Care Corporation was in the business of operating health care facilities. Health Air was not.

I do not find this is a case where individual partners' motivation should be considered but even so, considering the profit motive of the partners, I respectfully suggest that the record does not support a conclusion that the partners were motivated by an expectation of profit from the Corporation in the form of wages, dividends or an appreciation in value of their corporate stock.

The record suggests that the partners tried to avoid the impression that this was a hand-in-glove arrangement with the Corporation. The testimony is to the effect that the volume of useage of the airplane by the Corporation was not a primary consideration for the formation of the Partnership. Also, the number of shareholders of the Corporation increased yearly until December of 1981, there were eighteen shareholders, thereby diluting any expectation of great return to the Partnership members from the use of the airplane by the Corporation.

That petitioners expected to make a profit from the Corporation use of the airplane is more argumentative than factual. I find the following from *Landry v. Commissioner*, 86 T.C. 1284 (1986), applicable:

The issue of whether the requisite profit motive exists is one of fact to be resolved on the basis of all the evidence in the case. *Sutton v. Commissioner*, 84 T.C. 210, 221 (1985); *Brannen v. Commissioner*, 78 T.C. [471] at 506; *Dunn v. Commissioner*, 70 T.C. 715, 720

(1978); affd. 615 F.2d 578 (2d Cir.1980). In making this determination, more weight must be given to the objective facts than to the taxpayer's mere after-the-fact statements of intent. *Thomas v. Commissioner*, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir., June 6, 1986); *Engdahl v. Commissioner*, 72 T.C. 659 (1979).

In addition to the transferable profit motive, the majority finds a profit motive in the partnership operation. I find the record supports the Tax Court's finding that the partnership motive was one of tax avoidance. The purchase of the airplane was entirely financed. Even the downpayment was returned from the financed funds. No partner contributed any cash until 1982, yet petitioners claimed a business loss of $12,825.58 and an investment tax credit of $14,392.55 in 1979. The Corporation was a guarantor on the note. The operational lease between the Partnership and the Corporation was only to secure financing. The Partnership had a separate understanding with the Corporation in regard to use of the airplane. Not until 1982, when the Corporation began its negotiations with Hospital Corporation of America, were the terms of the lease honored. The Corporation, except for limited payments by Hangar I, advanced all sums for debt reduction, operating expenses and costs of repair of the airplane. The Corporation at one time indicated it would write off its costs over the credits it received for using the airplane.

The Partnership had no office and the Corporation provided most of the bookkeeping. Petitioner did not discuss any aspect of buying and leasing the airplane with his partners and had nothing to do with the management. The Partnership sustained substantial losses over a number of years and generated large deductions.

For all of the foregoing reasons, I would find that the Tax Court's finding that the Partnership was not carrying on a trade or business, but was formed for tax avoidance, is not clearly erroneous.