RICHARD W. GLENN AND ANN S. GLENN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Glenn v. Commissioner
Docket No. 16976-94.
United States Tax Court
T.C. Memo 1995-399; 1995 Tax Ct. Memo LEXIS 405; 70 T.C.M. (CCH) 453; August 21, 1995, Filed *405 Decision will be entered for respondent. Held: During 1989 through 1991, Ps' dog-breeding activity was an activity "not engaged in for profit" under sec. 183, I.R.C.; accordingly, Ps may not deduct any losses from that activity for those years. Held, further, Ps are liable for accuracy-related penalties under sec. 6662(a) and (b)( 1), I.R.C., for each year. Morton Noveck and Harold Noveck, for petitioners. Meso T. Hammoud, for respondent. LARO, Judge LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: Richard W. and Ann S. Glenn petitioned the Court to redetermine respondent's determination with respect to their 1989 through 1991 taxable years. Respondent determined the following income tax deficiencies and accuracy-related penalties for those years: Penalty
Year
Deficiency
Sec. 6662(a) and (b)(1)
1989
$ 9,740
$ 1,948
1990
11,650
2,330
1991
13,816
2,763
Following concessions [1] by respondent, we must decide: (1) Whether petitioners' dog-breeding activity was an activity "not engaged in for profit", see section 183, during their 1989 through 1991 taxable years. (2) Whether petitioners are liable for accuracy-related penalties for negligence *406 or disregard of rules or regulations, see section 6662(a) and (b)(1), for those years. We hold for respondent on both issues. Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. We separately refer to Richard W. and Ann S. Glenn as Mr. Glenn and Mrs. Glenn, respectively, and collectively refer to them as petitioners. FINDINGS OF FACT [2]
*407 Petitioners resided in Clarkston, Michigan, when they petitioned the Court. For the years in issue, they filed a Form 1040, U.S. Individual Income Tax Return, using the status of "Married filing joint return". During each of these years, Mr. Glenn worked approximately 50 hours per week as the president and chief executive officer of RWC, Inc. (RWC). [3] Mrs. Glenn was a homemaker during all years relevant herein. Mrs. Glenn started breeding dogs in or about 1976. Petitioners did not report this activity on their Federal income tax return until 1985. In 1985, Mrs. Glenn primarily bred Maltese dogs under the name "Rolling Glenn". Maltese is a toy breed with limited breeding capacity. When Maltese dogs are bred for their championship qualities, they are capable of producing from one to three offspring *408 per litter, up to a maximum of four litters. Mr. Glenn prepared petitioners' 1985 through 1991 Federal income tax returns. On these returns, petitioners reported the following taxable income, wage income, and gross income, expenses, and losses from dog breeding: Taxable
Dog Breeding Activity
Year
Income
Wages
Gross Income
Expenses
Losses
1985
$ 122,236
$ 173,387
$ 4,222
$ 23,768
$ 19,546
1986
110,510
161,694
2,904
26,300
23,396
1987
94,546
146,394
1,541
25,111
23,570
1988
171,707
151,189
2,394
25,374
22,980
1989
101,441
142,054
[1] 566
23,931
23,365
1990
88,373
130,047
- 0 -
28,468
28,468
1991
121,696
146,766
- 0 -
40,468
40,468
810,509
1,051,531
11,627
193,420
181,793
Of the breeding expenses, $ 15,627, $ 18,389, $ 16,157, $ 16,716, $ 13,667, $ 16,951, and $ 17,967 were attributable to dog show expenses that petitioners paid during the 1985 through 1991 taxable years, respectively. During 1991, petitioners applied for a special land use from *409 the Charter Township of Independence (Michigan), in order to keep more dogs on their property than allowed by the zoning rules. Petitioners filed their application after Mrs. Glenn was criminally cited for having on her property: (1) An illegal kennel, (2) unlicensed dogs, and (3) too many dogs. At the township's hearing on petitioners' application, petitioners stated that their dog-breeding activity was a hobby, rather than a business, and that they were not going to convert the activity into a business. [4] Based on petitioners' representations, the township approved the application subject to the proviso that petitioners' breeding activity would not be involved in a commercial purpose. During the years in issue, petitioners did not: (1) Advertise, or otherwise attempt to sell, any of their dogs; (2) maintain complete books and records for their breeding activity; or *410 (3) maintain a separate checking account for that activity. OPINION 1. Dog Breeding Activity
Respondent disallowed most of petitioners' deductions for their dog-breeding activity because she determined that the activity was "not entered into for profit" under section 183. Section 183 limits the deductions for an activity not entered into profit to the amount of the activity's income. Sec. 183(b). An activity is not entered into for profit if deductions are not allowable for the taxable year under section 162 or section 212(1) or (2). Sec. 183(c). Section 162 allows individuals to deduct ordinary and necessary expenses connected with the conduct of a trade or business. Section 212(1) and (2) allows individuals to deduct expenses for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Whether an individual was engaged in an activity for profit depends on whether he or she entered into, or continued, the activity with an "actual and honest" (even if unreasonable or unrealistic) objective of making an economic profit independent of any tax consequences. Smith v. Commissioner, 937 F.2d 1089, 1093, 1097 (6th Cir. 1991), *411 revg. 91 T.C. 733 (1988); Campbell v. Commissioner, 868 F.2d 833, 836 (6th Cir. 1989), affg. in part and revg. in part T.C. Memo. 1986-569; see sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer conducts an activity with such a profit objective rests on the facts and circumstances of the case. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). More weight is given to the objective facts of a case than to the individual's subjective expressions of his or her intent. Sec. 1.183 -2(a), Income Tax Regs.
In deciding whether an activity is engaged in for profit, we are aided by the following nonexclusive factors: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his or her adviser; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history *412 of income or losses in the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. None of these factors is dispositive, in and of itself, and a decision does not depend merely on the number of factors satisfied. Golanty v. Commissioner, supra at 426; Westbrook v. Commissioner, T.C. Memo. 1993-634; sec. 1.183-2(b), Income Tax Regs.Because respondent determined that petitioners' dog-breeding activity was not engaged in for profit, petitioners must prove her determination was erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). We turn to the nine factors, and we consider them one at a time. a. Manner in Which the Activity is Conducted
We consider the manner in which petitioners conducted their dog-breeding activity. Sec. 1.183-2(b)(1), Income Tax Regs.Objective facts showing that a taxpayer carried on his or her activity in a businesslike manner is indicative of a profit intent. Id. The same is true with respect *413 to the maintenance of complete and accurate records. Id.
Petitioners have not persuaded us that they conducted their dog-breeding activity in a businesslike manner. They did not use "cost accounting techniques that, 'at a minimum, provide the entrepreneur with the information he [or she] requires to make informed business decisions.'" Burger v. Commissioner, 809 F.2d 355, 359 (7th Cir. 1987), affg. T.C. Memo. 1985-523. They did not use the limited records that they did keep on the activity to monitor expenses or to assess the activity's profitability. They did not maintain a budget for the activity. They did not maintain a separate checking account for the activity. [5] They did not advertize any of the dogs for sale. They did not obtain the requisite licenses for the dogs. They did not comply with the applicable zoning rules until more than 5 years after they began the purported business in 1985, and they did so only after Mrs. Glenn received a criminal citation with respect thereto. Petitioners also represented to the township that their activity was not, and was not going to become, a business. *414 This factor supports respondent's determination. b. Expertise of Petitioners
We consider the expertise of petitioners with respect to their dog-breeding activity. Sec. 1.183-2(b)(2), Income Tax Regs.A taxpayer's expertise, research, and study of an activity, as well as his or her consultation with experts, may be indicative of a profit intent. Id. As this Court has noted: "In preparing for an activity, a taxpayer need not make a formal market study, but should undertake a basic investigation of the factors that would affect profit." Westbrook v. Commissioner, supra; Budin v. Commissioner, T.C. Memo. 1994-185. Mrs. Glenn's prior experiences in the breeding of dogs made her deft in the field. All the same, the mere fact that she was skilled in the art of dog-breeding does not mean that petitioners began or continued their dog breeding activity for profit. Our careful review of this factor suggests that they did not. Petitioners sought no professional advice on the economic aspects of breeding dogs; i.e., on how to make the activity profitable. Burger v. Commissioner, supra at 359. *415 They read no books on the business side of breeding dogs. They made no analysis or plan for earning a profit from breeding dogs. They did not study, or consult with professionals on, the magnitude of expenses that they were likely to encounter. This factor supports respondent's determination. c. Time and Effort Spent in Conducting the Activity
We consider the time and effort spent by petitioners in conducting their dog-breeding activity. Sec. 1.183-2(b)(3), Income Tax Regs.The fact that a taxpayer devotes much of his or her personal time to an activity may indicate a profit intent. Id.
We are not persuaded that Mr. Glenn spent any meaningful time helping Mrs. Glenn breed the dogs. Although Mrs. Glenn testified that she spent long hours breeding the dogs, and that she devoted much energy caring for the dogs, we believe that her time and effort would have been the same regardless of her motive. Ballich v. Commissioner, T.C. Memo. 1978-497. Based on ourobservation of Mrs. Glenn during her testimony, we discern that she receives much enjoyment and satisfaction from her dogs, and from petitioners' dog-breeding activity, without regard to the *416 activity's bottom line. As a point of fact, Mrs. Glenn testified that she was engaged in the dog-breeding activity for profit only after her attorney directed her to such an objective. This factor supports respondent's determination. d. Expectation That the Assets Will Appreciate in Value
We consider the expectation that assets used in petitioners' dog-breeding activity would appreciate in value. Sec. 1.183-2(b)(4), Income Tax Regs. We bear in mind that the term "profit" may include the appreciation in the value of assets used in an activity. Id.
From the time that petitioners began reporting their dog-breeding activity in 1985, until the last year in issue, they reported less than $ 12,000 in gross receipts and more than $ 193,000 in expenses. Petitioners contend that a champion dog, with championship lineage, can be sold at a price between $ 10,000 and $ 45,000. We are not convinced that any of petitioners' dogs were in that category. The instant record does not support petitioners' contention as to the selling price of their dogs, and we refuse to accept petitioners' self-serving assertion as to their dogs' fair market value. Although both petitioners testified that *417 they were negotiating the sale of their dogs at these prices, petitioners did not produce any corroborating evidence to support this testimony. [6] As a point of fact, petitioners reported aggregate sales of less than $ 400 in the 3 years in issue. This factor supports respondent's determination. e. Taxpayer's Success on Similar or Dissimilar Activities
We consider petitioners success on similar or dissimilar activities. Sec. 1.183-2(b)(5), Income Tax Regs.Although an activity is unprofitable, *418 the fact that a taxpayer has previously converted similar activities from unprofitable to profitable enterprises may show a profit intent with respect thereto. Id.
Mr. Glenn was the chief financial officer of a publicly held corporation during the years in issue. As evidenced by the steady losses of petitioners' dog-breeding activity during the same years, however, we infer that he did not use his business skills in petitioners' dog-breeding activity. The instant record does not support a finding that Mr. Glenn was involved in the decision-making process of the activity. The record shows that the activity sustained losses from the start and is unlikely to turn a profit based on its current operation. We find that this factor supports respondent's determination. f. The Activity's History of Income and/or Losses
We consider petitioners' history of income and/or losses with respect to their dog-breeding activity. Sec. 1.183-2(b)(6), Income Tax Regs.Losses continuing beyond the period customarily required to make an activity profitable, if not explainable, may indicate that the activity is not engaged in for profit. Id. Although a series of losses at the beginning of an *419 activity does not necessarily mean that the activity was not entered into for profit, such a string of losses may indicate a lack of profit intent absent unforeseen or fortuitous circumstances beyond the taxpayer's control (e.g., fire, disease, theft). Id.
By the end of the 1991 taxable year, petitioners had incurred more than $ 181,000 in losses from their dog-breeding activity. They used these losses to offset wages paid to Mr. Glenn by RWC. Petitioners have not shown the Court that any loss from their activity was due to unforeseen or fortuitous circumstances beyond their control. Although Mrs. Glenn testified that petitioners suffered "heartbreaking setbacks", the record does not support her assertion. This factor supports respondent's determination. g. Amount of Occasional Profits
We consider the occasional amount of profits, if any, from the activity. Sec. 1.183-2(b)(7), Income Tax Regs. Given that petitioners never reported a profit on their dog-breeding activity, and that the activity generated only $ 566 in income during the years in issue, we find that this factor supports respondent's determination. h. Financial Status of Taxpayer
We consider petitioners' *420 financial status. Sec. 1.183-2(b)(8), Income Tax Regs.Substantial income from sources other than an activity, particularly if the activity's losses generated substantial tax benefits, may indicate that the activity is not engaged in for profit. This is especially true where there are personal or recreational elements involved. Id.
From 1985 to 1991, petitioners reported substantial taxable income. Petitioners' ability to earn this income let them finance their dog-breeding activity, and it allowed them to use the activity's losses to reduce significantly their income tax liability for each year. This factor supports respondent's determination. i. Elements of Personal Pleasure
We consider the final factor: The personal pleasure derived from petitioners in conducting their activity. Sec. 1.183-2(b)(9), Income Tax Regs.Although the mere fact that a taxpayer derives personal pleasure from a particular activity does not mean that he or she lacks a profit intent with respect thereto, the presence of personal motives may indicate that the activity is not engaged in for profit. This is especially true where there are recreational or other personal elements involved. Id.
*421 The instant record leads us to conclude that Mrs. Glenn, who was primarily responsible for petitioners' dog-breeding activity, engaged in that activity due to her love and affection for dogs. In addition to the fact that she enjoyed breeding and showing her dogs, Mrs. Glenn aspired to be a serious and competitive breeder, and she relished her "success" in breeding. Indeed, Mrs. Glenn enjoyed working with dogs so much that she performed the following tasks during the 1985 through 1991 taxable years without receiving compensation: (1) Writing extensively on the breeding and showing of dogs, (2) teaching seminars on the same subject, and (3) teaching dog obedience for the township. Mrs. Glenn also served, without compensation, as the president of the American Maltese Association. As this Court has stated, with respect to this factor: Unquestionably, an enterprise is no less a 'business' because the entrepreneur gets satisfaction from his work; * * * however, where the possibility for profit is small (given all the other factors) and the possibility for gratification is substantial, it is clear that the latter possibility constitutes the primary motivation for the activity. * * * *422 [Burger v. Commissioner, T.C. Memo. 1985-523, affd. 809 F.2d 355 (7th Cir. 1987); fn. ref. omitted.]
As this Court has also stated, in the same context: "The gratification derived from an occupation worth doing, possibly beneficial to others and probably requiring long hours of arduous labor, must still not be confused with an intention to return a profit." White v. Commissioner, 23 T.C. 90, 94 (1954), affd. 227 F.2d 779 (6th Cir. 1955). This factor supports respondent's determination. j. Conclusion
Based on our careful review of the record, and in conjunction with our evaluation of the nine factors above, we conclude that petitioners did not conduct their dog-breeding activity with an "actual and honest" objective of making a profit. The activity provided petitioners with satisfaction, pride and prestige, and any income derived therefrom served only as an incidental bonus to them. We sustain respondent's determination with respect to this issue. 2. Accuracy-Related Penalties
Respondent also determined that petitioners were liable for penalties *423 under section 6662(a) and (b)(1) because their underpayment of income tax for each year was due to: (1) Negligence or (2) intentional disregard of rules or regulations. Section 6662(a) and (b)(1) imposes an accuracy-related penalty equal to 20 percent of the portion of an underpayment that is attributable to negligence or disregard of rules or regulations. Petitioners have the burden of establishing respondent's determination wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Estate of Monroe v. Commissioner, 104 T.C. 352, 365-366 (1995). Petitioners must prove that they were not negligent; i.e., that they made a reasonable attempt to comply with the provisions of the Internal Revenue Code, and that they were not careless, reckless, or in intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b), Income Tax Regs. Negligence has also been defined as "a lack of due care or a failure to do what a reasonable person would do under the circumstances." Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; *424 see also Pasternak v. Commissioner, 990 F.2d 893, 902 (6th Cir. 1993), affg. Donahue v. Commissioner, T.C. Memo. 1991-181. Petitioners presented no evidence on this issue. We sustain respondent's determination. We take into account Mr. Glenn's business experience and familiarity with financial reporting requirements in determining whether petitioners were negligent in the preparation of their returns. Sutor v. Commissioner, 17 T.C. 64, 68-69 (1951). We conclude that petitioners, in deducting losses from the dog breeding, did not make a reasonable attempt to comply with the provisions of the Internal Revenue Code and sustain respondent's determination with respect to this penalty for all years. We have considered all of petitioners' arguments, and to the extent not addressed above, have found them to be without merit. In accordance with the concessions made in the stipulation of facts, filed May 8, 1995, Decision will be entered for respondent. Footnotes
1. Following concessions by respondent the amounts in dispute are as follows: ↩
Penalty
Year
Deficiency
Sec. 6662(a) and (b)(1)
1989
$ 7,711
$ 1,542
1990
9,395
1,879
1991
13,375
2,675
2. The stipulation of facts and attached exhibits are incorporated herein by this reference. With respect to the testimony of petitioners that was elicited at trial, we found neither of these witnesses to be credible and found much of their testimony to be vague, uncorroborated, inconsistent, and self- serving. Under the circumstances, we are not required to, and we do not, rely on that testimony to support petitioners' positions herein. See Estate of DeNiro v. Commissioner, 746 F.2d 327, 330-331 (6th Cir. 1984), affg. in part and remanding in part T.C. Memo. 1982-497; Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. per curiam T.C. Memo. 1970-335; Tokarski v. Commissioner, 87 T.C. 74, 77↩ (1986).
3. RWC, Inc., is a publicly held corporation that designs and manufactures equipment. Among other things, Mr. Glenn was principally responsible for RWC's operations and the compilation and correctness of its business records.↩
1. Of this amount, $ 350 was attributable to the sale of livestock, and $ 216 was from "other income, including Federal and state gasoline or fuel credit or refund".↩
4. At the time of the hearing, petitioners had 18 dogs consisting of 12 Maltese, 3 Pugs, and 3 Afghans. Of the 18 dogs, 5 were over 14 years of age.↩
5. Although Mr. Glenn testified that petitioners maintained a separate checking account for the activity, this account was in the name of Mrs. Glenn, rather than "Rolling Glenn", and petitioners used it to pay only some of the activity's expenses.↩
6. We give little weight to the testimony of Alvin Alford as to the value of petitioners' dogs. Although Mr. Alford testified that he had seen Maltese dogs advertised for sale in newspapers during the subject years at prices ranging from $ 5,000 to $ 20,000, Mr. Alford never saw petitioners' dogs. We do not know the qualifications of the dogs that were offered for sale in the newspapers, whether the advertised dogs were comparable to petitioners' dogs, or whether the advertised dogs actually sold for the advertised prices.↩