T.C. Summary Opinion 2012-120

UNITED STATES TAX COURT

JOHN T. KUTNEY AND REGINA R. KUTNEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16979-10S.            Filed December 17, 2012.

John T. Kutney and Regina R. Kutney, pro sese.

<u>Robert D. Kaiser</u> and <u>Richard J. Hassebrock</u>, for respondent.

SUMMARY OPINION

THORNTON, <u>Chief Judge</u>: This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code (Code) in effect when the petition was

filed. All other section references are to the Code in effect for the years at issue,

and all Rule references are to the Tax Court Rules of Practice and Procedure.

Dollar amounts have been rounded to the nearest dollar. Pursuant to

section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioners' Federal income tax and also determined section 6662(a) accuracy-related penalties as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 2005 | $10,984 | $2,197 |
| 2006 | 14,409 | 2,882 |
| 2007 | 19,175 | 3,835 |

After concessions by petitioners, the issues remaining for decision are: (1) whether petitioner husband John Kutney engaged in various consulting activities with the intent to make a profit within the meaning of section 183; (2) whether petitioners are entitled to various deductions claimed on Schedules C, Profit or Loss From Business (Sole Proprietorship); (3) whether petitioners are entitled to various deductions claimed on Schedules E, Supplemental Income and Loss (From rental real estate, royalties, partnerships, S corporations, estates, trusts, REMICs, etc.), related to their rental properties; and (4) whether petitioners are liable for the section 6662(a) accuracy-related penalty for each year at issue.

## Background

The parties have stipulated some facts, which we incorporate herein by this reference. When they filed their petition, petitioners resided in Ohio.

## I. Consulting Activities

From 1952 to about 1989 Mr. Kutney worked as an aeronautical engineer for General Electric Co. (GE). Following his retirement from GE, he sought independent engineering work. In 1990 he incorporated KCS-COS, Inc. (KCS-COS), as a C corporation for the purpose of providing aerodynamic engineering services to the aviation and automotive industries and to government agencies and universities. Mr. Kutney is the sole owner of KCS-COS.

Mr. Kutney's independent engineering work consisted of several different consulting activities. He contracted with various companies to design aeronautical components, including "hush kits" for reducing airplane engine noise and specialized airplane windows that reduce drag.[1] Mr. Kutney's work was limited to

---

[1] In 1998 the National Aeronautics and Space Administration selected one of Mr. Kutney's airplane window projects for a phase I contract under its Small Business Innovation Research program. That year Mr. Kutney received $70,000 under his phase I contract and created a design but was not awarded a $680,000 phase II contract to complete the project. Mr. Kutney attempted to get commercial airline companies to finance the completion of his project but was unsuccessful. Mr. Kutney spent no significant time on this project after 2003.

designing the components, and to date he has not produced or sold any products resulting from his designs.

In 2007 Mr. Kutney also designed bookends, but he never produced or sold any. He also gave unpaid lectures to university students. Through his company Mr. Kutney also attempted unsuccessfully to secure a book writing contract with the American Institute of Aeronautics and Astronautics.

Mr. Kutney had no written business plan and kept no separate business bank account for managing his consulting activities. He used his personal bank account to pay expenses.

## II. Rental Activities

During the years at issue petitioners owned several rental properties in Cincinnati, Ohio. They rented out two of these properties--an apartment complex on Springfield Pike and another one on Worthington Avenue. Mr. Kutney managed these properties and contracted with Eduardo Langdon and others to do maintenance and repair work. Mr. Kutney paid for all materials and oversaw the work that Mr. Langdon and his crew performed. Mr. Kutney kept no separate bank account for these rental activities and used his personal account to pay expenses. Mr. Kutney kept no contemporaneous log or other documentation to record the number of hours he spent working on his rental properties.

## III. Petitioners' Tax Returns

On Schedules C attached to their joint Federal income tax returns for the years at issue, petitioners reported all expenses related to Mr. Kutney's various consulting activities, including those of KCS-COS, under the heading "Aero Consulting".[2] (KCS-COS filed no tax returns for tax years 2005 through 2007.) Petitioners' Schedules C reported zero gross income and reported net losses of $47,553, $49,750, and $16,319 for tax years 2005, 2006, and 2007, respectively.

On Schedules E attached to their returns petitioners claimed loss deductions from their rental real estate activities of $29,950, $27,250, and $79,360 for 2005,

---

[2]In 2005 these expenses included: $12,500 of car and truck expenses, $20,500 of travel expenses, $4,212 of telephone expenses, $1,211 for postage, $3,476 for computer supplies, $500 for printing, $3,454 of ISP and media expenses, $500 for seminars, and $1,200 for educational materials. In 2006 these expenses included: $12,500 of car and truck expenses, $14,500 of office expenses, and $22,750 of travel expenses. In 2007 these expenses included: $2,132 of car and truck expenses, $1,200 of legal and professional expenses, $7,920 of office expenses, $1,121 of telephone expenses, $32 for postage, $337 for computer supplies, $1,677 of ISP and media expenses, $1,500 of meeting expenses, and $400 for educational materials.

2006, and 2007, respectively.[3] Petitioners made no election to treat all of their rental properties as a group. Petitioners also did not complete line 43 on any of their Schedules E to indicate that they considered Mr. Kutney to be a real estate professional.

During the years at issue petitioners reported outside income from dividends, IRA distributions, and Social Security benefits. More particularly, petitioners reported dividend income of $34,969, $49,469, and $56,600 for 2005, 2006, and 2007, respectively. They reported income from IRA distributions of $71,077, $70,642, and $74,425 for 2005, 2006, and 2007, respectively. In addition, they reported Social Security benefit income of $4,072, $16,719, and $16,041 for 2005, 2006, and 2007, respectively.

---

[3]For 2005 petitioners reported a net loss of $99,662 from their rental real estate activities but claimed only $25,000 of this loss on part I of their Schedule E. They also reported a $4,950 loss from an S corporation, Greenwood Draperies Corp. on part II of their Schedule E, which they combined with the $25,000 part I loss to arrive at their $29,950 total claimed loss deduction. Petitioners concede that they are not entitled to the $4,950 loss deduction from Greenwood Draperies Corp.

For 2006 petitioners reported a net loss of $100,066 from their rental real estate activities but claimed only $25,000 of this loss on part I of their Schedule E. They also reported a $2,250 loss from Greenwood Draperies Corp. on part II of their Schedule E which they combined with the $25,000 part I loss to arrive at their $27,250 total claimed loss deduction. They concede that they are not entitled to the $2,250 loss from Greenwood Draperies Corp.

IV. Notice of Deficiency

In his notice of deficiency for tax years 2005, 2006, and 2007, respondent disallowed all expense deductions petitioners claimed on Schedules C and certain expense deductions claimed on Schedules E.[4] Respondent also limited the amounts of petitioners' claimed Schedule E loss deductions, having determined that they should be subject to the section 469 limitations on passive activity losses.[5]

## Discussion

I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that those

---

[4]Respondent disallowed $94,365, $96,472, and $44,600 of petitioners' claimed deductions for their reported Schedule E expenses for 2005, 2006, and 2007, respectively.

[5]After making other adjustments to petitioners' income, respondent determined that petitioners were subject to the phaseout rules of sec. 469(i)(3) and disallowed $7,344, $12,362, and $70,827 of the total loss deductions petitioners claimed on Schedules E for taxable years 2005, 2006, and 2007, respectively.

determinations are incorrect.[6]  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Tax deductions are a matter of legislative grace, and petitioners bear the burden of proving entitlement to deductions claimed.  <u>See</u> Rule 142(a)(1); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  Petitioners also bear the burden of substantiating the amounts and purpose of any items claimed as deductions.  <u>See</u> sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89 (1975), <u>aff'd per curiam</u>, 540 F.2d 821 (5th Cir. 1976).

## II.  <u>Consulting Activities</u>

Section 183(a) generally disallows any deduction attributable to an activity not engaged in for profit.  As an exception to this general rule, section 183(b)(2) provides that if an individual engages in an activity not for profit, deductions relating to that activity are allowable to the extent gross income derived from the activity exceeds deductions that would be allowable under chapter 1 of the Code without regard to whether the activity constitutes a for-profit activity.  <u>See</u> <u>Allen v.</u>

---

[6]Petitioners do not contend and the record does not establish that the burden of proof as to any relevant factual issue should shift to respondent pursuant to sec. 7491(a).

Commissioner, 72 T.C. 28, 32-33 (1979). The parties disagree as to whether Mr. Kutney engaged in his consulting activities with the objective of making a profit.

To carry the burden of establishing that their activities were engaged in for profit, taxpayers must show that they entertained an actual and honest, even if unreasonable or unrealistic, profit objective in engaging in the activity. Campbell v. Commissioner, 868 F.2d 833, 836 (6th Cir. 1989), aff'g in part, rev'g in part T.C. Memo. 1986-569; see also Hayden v. Commissioner, 889 F.2d 1548, 1552 (6th Cir. 1989), aff'g T.C. Memo. 1988-310. Whether a taxpayer has the requisite profit motive is a question of fact, to be resolved on the basis of all relevant circumstances, with greater weight being given to objective factors than to mere statements of intent. See Tamms v. Commissioner, T.C. Memo. 2001-201.

The regulations under section 183 provide a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit. See Campbell v. Commissioner, 868 F.2d at 836 n.3. No one factor is controlling. Id. The factors include: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort the taxpayer expended in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the taxpayer's success in carrying on other activities; (6) the taxpayer's history of income or loss with respect to the activity;

(7) the amount of occasional profits, if any, which are earned; (8) the taxpayer's financial status; and (9) the extent to which elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs.; see also Golanty v. Commissioner, 72 T.C. 411, 425 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981).

For the reasons discussed below we conclude that for the years at issue Mr. Kutney has failed to establish that he had an actual and honest profit objective in conducting his consulting activities.

Mr. Kutney kept almost no records to track income and expenses, he had no written business plan, and he had no separate bank account for any of his consulting activities. These failures weigh heavily against finding a profit motive under section 183. See Zidar v. Commissioner, T.C. Memo. 2001-200.

Mr. Kutney testified, and the evidence he submitted indicates, that most of his time spent working on his consulting activities was in years other than those at issue. During the years at issue Mr. Kutney's consulting activities generated no gross receipts. During each year at issue petitioners also reported substantial income from dividends, IRA distributions, and Social Security benefits. Substantial income from sources other than the activity may indicate the lack of a profit motive, particularly if losses from the activity generate substantial tax benefits and personal

or recreational elements are involved. Zidar v. Commissioner, T.C. Memo. 2001-200 (citing section 1.183-2(b)(8), Income Tax Regs.). Mr. Kutney's testimony indicated that he was not concerned with making a profit and that he took on many projects out of enjoyment. We believe that the totality of factors described above strongly suggests the absence of a profit motive.

More fundamentally, Mr. Kutney failed to establish that he actually incurred any of his claimed business expenses or that they qualified as ordinary and necessary expenses. To be entitled to deduct business expenses, a taxpayer is required to substantiate the amount and purpose of any claimed deduction. See secs. 162, 274; Ellington v. Commissioner, T.C. Memo. 1989-374, aff'd without published opinion, 936 F.2d 572 (6th Cir. 1991). Mr. Kutney acknowledged in his testimony that he failed to keep adequate records to substantiate his claimed expenses, that he was estimating his expenses, and that he had no way to determine which expenses related to a particular activity. Although he placed into evidence numerous credit card statements and canceled checks, he also testified that he used his credit card and checking accounts interchangeably for business and personal uses. We are unable on this record to conclude that petitioners are entitled to any of their claimed business expense deductions.

- 12 -

Finally, Mr. Kutney testified that although KCS-COS was incorporated as a C corporation, he reported expenses on its behalf on Schedules C attached to petitioners' joint returns. Petitioners are not entitled to deduct the expenses of KCS-COS. See Deputy v. Du Pont, 308 U.S. 488, 493-494 (1940); Hewett v. Commissioner, 47 T.C. 483, 487 (1967).

For these reasons we sustain respondent's determination to disallow petitioners' claimed Schedule C deductions.

## III. Rental Activities

Section 469(a) limits the deductibility of losses from certain passive activities of individual taxpayers and certain entities. Disallowed passive losses may be carried over to the next year. Sec. 469(b). Generally, a passive activity is a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Material participation is defined as regular, continuous, and substantial involvement in business operations. Sec. 469(h)(1).

Generally, rental activities are per se passive activities, whether or not the taxpayer materially participates. Sec. 469(c)(2). As an exception to this rule, the rental activities of taxpayers in real property trades or businesses (real estate professionals) are not treated as per se passive activities but rather as trade or business activities, subject to the material participation requirements of section

469(c)(1).  Sec. 469(c)(7); see also sec. 1.469-9(e)(1), Income Tax Regs.  Under

section 469(c)(7)(B) a taxpayer is a real estate professional if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

In the case of a joint return, these requirements are met if, and only if, either

spouse separately satisfies them.  Id.  A taxpayer's material participation is

determined separately with respect to each rental property, unless the taxpayer

makes an election to treat all interests in rental real estate as a single rental real

estate activity.  Sec. 469(c)(7)(A); sec. 1.469-9(e)(1), Income Tax Regs.  All of a

taxpayer's real estate activities are taken into account to determine whether the 750-

hour requirement is satisfied.  See Harnett v. Commissioner, T.C. Memo. 2011-191,

aff'd, __ Fed. Appx. __, 2012 U.S. App. LEXIS 23348 (11th Cir. Nov. 14, 2012);

Fowler v. Commissioner, T.C. Memo. 2002-223.

Section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727

(Feb. 25, 1988), provides:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

The regulations do not allow a postevent "ballpark guesstimate". Moss v. Commissioner, 135 T.C. 365, 369 (2010) (and cases cited thereat).

Mr. Kutney's testimony regarding the time he spent on his consulting activities and his rental real estate activities was vague and indefinite. He testified that he divided his time "half and half" between his consulting activities and his real estate activities. But in his posttrial brief he stated that he spent 153 hours during the year working on his consulting activities and between 1,619 and 2,912 hours during the year working on his rental real estate activities. Particularly in the light of these inconsistencies, we are not persuaded that Mr. Kutney performed more than one-half of his personal services in real property trades or businesses as required under section 469(c)(7)(B)(i).

As for the 750-hour service requirement of section 469(c)(7)(B)(ii), Mr. Kutney contends that he spent well over 1,000 hours working on his real estate activities. But he maintained no contemporaneous log of the time he spent working

on these activities and provided no other documentation to establish the number of hours that he spent on these activities. He acknowledged in his testimony that the number of hours he claims to have worked on the rental properties is an estimate. This estimate varied throughout the trial. At different points Mr. Kutney claimed to have spent 48 hours per week, 28 hours per week, and 14 hours per week working on his rental properties. As mentioned above, in his posttrial brief this estimate changed to 1,619 to 2,912 hours during each year.[7] Mr. Kutney also testified that Mr. Langdon performed most of the work on the rental properties during the years at issue.

Mr. Kutney's statements regarding the time he spent working on the properties are no more than a postevent "ballpark guesstimate". Petitioners have failed to show on this record that Mr. Kutney met the 750-hour service requirement of section 469(c)(7)(B)(ii) for the years at issue.[8] Consequently, he does not

---

[7]Petitioners also contend that Mr. Kutney's ownership and management of the rental properties was a "truly full day activity" that required him to be available all day every day and that these on-call hours should count towards the 750-hour requirement. We disagree with this contention. Sec. 469(c)(7) applies where the taxpayer "performs more than 750 hours of services" rather than where the taxpayer is merely on call to perform services. Sec. 469(c)(7)(B)(ii); see also Moss v. Commissioner, 135 T.C. 365, 370 (2010); sec. 1.469-9(b)(4), Income Tax Regs.

[8]Because petitioners did not elect to aggregate their rental real estate

(continued...)

qualify as a real estate professional for purposes of section 469(c)(7), and petitioners' real estate activities must be treated as a passive activity under section 469(c)(2), as respondent determined.

## IV. Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any portion of a tax underpayment that is attributable to, among other things, negligence or a substantial understatement of income tax. "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code and also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A substantial understatement of income tax is defined as an understatement that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Under section 7491(c), the Commissioner bears the burden of production with respect to the section 6662(a) penalty. Generally, this means he must come forward with sufficient evidence indicating that it is appropriate to impose the relevant

---

[8](...continued)
activities, pursuant to sec. 469(c)(7)(A) they must treat each interest separately. See sec. 469(c)(7)(A)(ii). As discussed above, petitioners failed to show that Mr. Kutney worked for more than 750 hours each year even in the aggregate, much less that he materially participated with respect to each of the rental properties.

penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Respondent has met his burden of production for the section 6662(a) penalty, as he has provided evidence of both a substantial understatement of income tax and petitioners' negligence in failing to comply with recordkeeping requirements.[9]

The accuracy-related penalty does not apply with respect to any portion of the underpayment if it is shown that the taxpayer had reasonable cause and acted in good faith.  Sec. 6664(c)(1).  The burden of proof is on petitioners to establish reasonable cause.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-448; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).  Petitioners have not shown or even expressly claimed that they had reasonable cause with respect to their understatements for 2005, 2006, and 2007.  We therefore sustain respondent's imposition of the accuracy-related penalties for the years at issue.

---

[9]The tax required to be shown on petitioners' 2005, 2006, and 2007 returns was $11,273, $14,409, and $19,803, respectively.  The tax shown on the returns was $289, zero, and $628 for 2005, 2006, and 2007, respectively, resulting in deficiencies of $10,984, $14,409, and $19,175, respectively.  As the understatements exceed both 10% of the tax required to be shown on the returns ($1,124, $1,441, and $1,980) and $5,000, respondent has shown a substantial understatement of income tax.  Sec. 6662(d)(1).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.