T.C. Memo. 1998-87

UNITED STATES TAX COURT

WALTER C. DEMATTIA AND ELIZABETH J. CROUSE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 14267-96, 27239-96.      Filed March 2, 1998.

Mark R. Solomon, for petitioners.

Eric R. Skinner, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  In two separate notices of deficiency dated
June 11 and September 19, 1996, respondent determined
deficiencies in petitioners' Federal income tax for 1992 and 1993
in the amounts of $11,023 and $19,550, respectively, and an
accuracy-related penalty under section 6662 for 1992 in the
amount of $2,205.  Petitioners petitioned the Court to

redetermine these determinations, and these cases were consolidated for trial, briefing, and opinion. Following respondent's concession as to the section 6662 accuracy-related penalty for 1992, we must decide: (1) Whether petitioners' sponsorship of Constant DeMattia's (Constant) golf pursuit was an activity not engaged in for profit within the meaning of section 183(a); and (2) if the activity was one engaged in for profit, whether certain deductions disallowed by respondent are allowable. Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue, Rule references are to the Tax Court Rules of Practice and Procedure, and dollar amounts are rounded to the nearest dollar.

                              FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and the exhibits submitted therewith are incorporated herein by this reference. Petitioners, husband and wife, resided in Farmington Hills, Michigan, when they petitioned the Court. Petitioners timely filed their joint Federal income tax returns for 1992 and 1993.

Walter C. DeMattia has four children from previous marriages. Constant is Dr. DeMattia's youngest child and the only child from his marriage to Fernande DeMattia nee Fernande Allain. Elizabeth J. Crouse is Constant's stepmother. Dr. DeMattia and his son Constant have maintained a very close

relationship.  Dr. DeMattia began playing golf recreationally with Constant when he was 15 years old.  While in high school, Constant played in local junior tournaments and some tournaments held throughout the eastern United States.  Following high school, in or around 1985, he attended Stetson University in DeLand, Florida, on a full golf scholarship.  After graduation, Constant took up residence in Altamonte Springs, Florida, a suburb of Orlando, Florida.

In September 1989, at 57 years old, Dr. DeMattia retired from his dentistry practice.  Around the same time, Dr. DeMattia and Constant discussed Constant's playing golf professionally and Dr. DeMattia's sponsorship of Constant in this pursuit.

From 1990 through 1996, Dr. DeMattia and Constant entered into yearly sponsorship agreements.  Each sponsorship agreement contained the following terms:

> W.C. DeMattia shall act as agent, manager and coach of Constant A. DeMattia in his professional golf career. In addition to the above services[,] W.C. DeMattia agrees to furnish money and resources to or for the benefit of C.A. DeMattia's professional golf career during the calendar year * * *.  The above shall include enabling living funds.

> In return C.A. DeMattia Agrees to give W.C. DeMattia a percentage of his earnings based on the following schedule:

> Earnings Btwn[:][1]           W.C. DeMattia Receives[:]

---

[1]  The sponsorship agreements do not require Constant to pay any percentage of his earnings below $5,000.

| | |
|---|---|
| $5,000 - $10,000 | 70% |
| 10,000 - 15,000 | 60 |
| 15,000 - 50,000 | 50 |
| 50,000 - 100,000 | 40 |
| 100,000 + | 30 |

The 1990 through 1995 sponsorship agreements were signed, respectively, on the following dates:  May 1, 1990; January 3, 1991; January 4, 1992; December 30, 1992; January 5, 1994; and December 29, 1994.[2]  The 1990 through 1994 sponsorship agreements were virtually identical.  The 1995 sponsorship agreement incorporated the following additional change: "It is understood that the word 'Earnings' as used in this contract[,] shall be interpreted to mean 'Winnings from Golf Tournaments'".  This addition stems from a change in Constant's financial circumstances.  During 1992 through 1994, Constant had no source of income independent of his golfing activity, and his disposable funds came primarily from the sponsorship agreements.  In 1995, Constant accepted a paid position as a golf instructor with Golf Digest.  The 1995 sponsorship agreement stated that the parties "clarified" the meaning of "earnings" as a result of Constant's new employment position.

The sponsorship agreements did not impose any limits on Dr. DeMattia's potential liability for Constant's expenses or specify productivity goals for Constant, to include a tournament participation requirement.  Prior to entering into these

_____

[2]  The 1996 sponsorship agreement is not in evidence.

agreements, Dr. DeMattia had never sponsored a professional athlete or acted as an agent, manager, or coach to a professional athlete.

In 1992, Dr. DeMattia made direct and indirect expenditures to or on behalf of Constant totaling $55,839.[3]  In 1993, Dr. DeMattia made like expenditures in the amount of $66,728.[4] Some of the aforementioned expenditures included expenses incurred by Dr. DeMattia during trips to Florida.  During 1992 and 1993, Dr. DeMattia made six to eight trips per year to Florida.  During 1990 through the present, Dr. DeMattia's father lived in Ft. Lauderdale, Florida, approximately a 4-hour drive from Dr. DeMattia's son's apartment in Altamonte Springs, Florida.  Dr. DeMattia made occasional trips to see his father while visiting Constant in Florida.

In an effort to enter the professional ranks, Constant attended the Professional Golf Association's (PGA) tour qualifying school in 1991 through 1994, and 1997.[5]  Constant also

---

[3]  This sum is based on the following stipulated amounts: $19,126 for golf-related expenses; $6,073 for Constant's personal expenses; $1,540 in cash transfers; and $29,100 transferred from Dr. DeMattia's bank account to Constant's bank account.

[4]  This sum is based on the following stipulated amounts: $16,369 for golf-related expenses; $5,219 for Constant's personal expenses; $3,270 in tournament entry fees; $845 in cash transfers; and $41,025 transferred from Dr. DeMattia's bank account to Constant's bank account.

[5]  The PGA tour qualifying school is one of a limited number
(continued...)

played in non-PGA sponsored tournaments and one PGA-sponsored
tournament. During 1990 through 1996, Constant won between four
and five tournaments, none of which was sponsored by the PGA,
with his largest share of the winnings in a single tournament at
$2,000. During 1994 through 1996, Constant suffered a series of
illnesses and injuries that affected his ability to participate
in tournaments and consequently his earning potential. In 1994,
Constant suffered from a lingering viral infection. Due, in
part, to this illness, Constant started but failed to finish PGA
tour qualifying school in 1994.[6] In 1995, he suffered first a
sprained wrist and then a broken hand. In 1996, Constant broke
his leg. He did not attend the PGA tour qualifying school in
either 1995 or 1996. Due to his physical injuries and the
demands of his position as a golf instructor, Constant did not
participate in any golf tournaments from March 1995 through
December 1995. Although Constant made virtually no progress in
gaining entrance into the PGA from 1994 through 1996, Dr.
DeMattia's support remained unwavering.

---

[5](...continued)
of methods by which a player can qualify for play in PGA-
sponsored tournaments.

[6] Petitioners submitted no evidence regarding Constant's
performance at the PGA tour qualifying school in 1991 through
1993 and in 1997.

During 1990 through 1996, petitioners claimed the following income, expenses, and losses relating to Dr. DeMattia's sponsorship of Constant's golf career:

| Year | Income | Expense | Loss |
|------|--------|---------|------|
| 1990 | $0 | $14,507 | $14,507 |
| 1991 | 0 | 45,316 | 45,316 |
| 1992 | 0 | 51,461 | 51,461 |
| 1993 | 1,113 | 69,160 | 68,047 |
| 1994 | 561 | 48,267 | 47,706 |
| 1995 | 0 | 25,728 | 25,728 |
| 1996 | 0 | 12,891 | 12,891 |
| Total | 1,674 | 267,330 | 265,656 |

The claimed expenses for each year include Constant's personal living expenses such as rent, food, nongolf related transportation and clothing, and entertainment. The claimed expenses also include Dr. DeMattia's travel expenses for trips to Florida and varied tournament locations.

Dr. DeMattia maintained a crude record of expenses relating to petitioners' sponsorship agreements. He maintained a series of envelopes in which he stored receipts; for example, hotel bills were placed in the "hotel bill envelope". At the end of each year, Dr. DeMattia would prepare a summary based on those receipts and the summaries were in turn used by his accountant to prepare petitioners' Federal income tax returns. Dr. DeMattia did not maintain a separate bank account for the golf sponsorship activities, nor did he maintain records of tournament entries or prize money availability.

In the notices of deficiency, respondent determined that petitioners were not engaged in a golf sponsorship activity for profit within the meaning of section 183(a) and disallowed the losses for 1992 and 1993.

OPINION

Section 183 limits the deductions for an activity not entered into for profit to the amount of the activity's income. Sec. 183(b). Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."[7] An activity is engaged in for profit if the taxpayer entertained an actual and honest, even though unreasonable or unrealistic, profit objective in engaging in the activity. Smith v. Commissioner, 937 F.2d 1089, 1097 (6th Cir. 1991), revg. 91 T.C. 733 (1988); Campbell v. Commissioner, 868 F.2d 833, 836 (6th Cir. 1989), affg. in part, revg. in part, and remanding T.C. Memo. 1986-569; Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. The determination

_____

[7] Section 162 deals with "trade or business expenses", which are limited to "ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business". Sec. 212 deals with expenses for the "production or collection of income" or "management, conservation, or maintenance of property held for the production of income".

of whether the requisite profit objective exists is to be resolved on the basis of all the surrounding facts and circumstances. Finoli v. Commissioner, 86 T.C. 697, 722 (1986); Allen v. Commissioner, 72 T.C. 28, 34 (1979). Petitioners bear the burden of proving that Dr. DeMattia entered into and remained in the golf sponsorship activity with the requisite profit objective. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Beck v. Commissioner, 85 T.C. 557, 570 (1985); Flowers v. Commissioner, 80 T.C. 914, 931 (1983).[8]

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine factors to be considered when ascertaining a taxpayer's intent. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. All facts and circumstances must be taken into

---

[8] Sec. 183(d) provides a statutory reversal of the burden of proof if petitioners meet specified criteria. Petitioners do not meet such criteria.

account, and more weight may be given to some factors than to others. Glenn v. Commissioner, T.C. Memo. 1995-399, affd. without published opinion 103 F.3d 129 (6th Cir. 1996); Sec. 1.183-2(b), Income Tax Regs. None of these factors is dispositive. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).

Dr. DeMattia testified that he had an honest objective of making a profit from the golf sponsorship agreements with his son. He further testified that he believed that he would make millions of dollars as a result of the sponsorship agreements. We give greater weight to objective factors than to Dr. DeMattia's uncorroborated testimony as to his intent in determining whether he had the requisite profit objective. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

### 1. Manner in Which the Activity is Conducted

That the taxpayer carried on the activity in a businesslike manner and maintained complete and accurate records may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs. Additionally, a change in operating procedures, adoption of new techniques, or the abandonment of unprofitable methods indicates a profit motive. Id.

Among other things, respondent argues that the following facts establish that Dr. DeMattia failed to conduct the activity

in a businesslike manner:  (1) Dr. DeMattia failed to adequately assess the activity's profitability; (2) the sponsorship agreements failed to limit Dr. DeMattia's potential liability or require Constant to participate in a minimum number of tournaments during any given year; (3) Dr. DeMattia failed to maintain expense ledgers or journals indicating expenses incurred or the specific reason for expenses incurred; (4) Dr. DeMattia failed to document Constant's golf performance at any given tournament, the number of tournaments entered, or the potential prize money available at any given tournament.  Respondent also argues that Dr. DeMattia's failure to implement any changes in operating procedures and methods in response to mounting losses indicates a lack of profit motive.

Petitioners argue that Dr. DeMattia entered into the agreements and conducted the activity in a businesslike manner. First, petitioners cite Dr. DeMattia's preliminary investigation into the feasibility of the sponsorship as evidence of the requisite intent.  Dr. DeMattia testified that his decision to sponsor his son was based on extensive research.  For example, in order to evaluate the investment's profitability potential, he talked to a number of knowledgeable people regarding his son's likelihood of playing on the PGA tour.  Among others, Dr. DeMattia spoke to his son's college coach at Stetson University, the head golf instructor for Golf Digest, the golf coach at

Northwestern University, and the director of the Senior PGA tour. Dr. DeMattia testified that, prior to entering into the sponsorship agreements, and on the advice of an attorney, he talked to numerous amateur players in order to determine the content of similar sponsorship agreements. Based on these conversations, he took a draft sponsorship agreement to his attorney Pat Ledwidge. Petitioners also claim that Dr. DeMattia made forecasts and estimates of the activity's likely expenses and revenues, to include entry fees and motel costs. Second, petitioners cite Dr. DeMattia's record-keeping system as evidence that he conducted the activity in a businesslike manner. Third, petitioners contend that Dr. DeMattia took numerous actions to ensure the eventual profitability of his investment, including consultations with advisers regarding his son's performance.

Petitioners have not persuaded us that Dr. DeMattia conducted the sponsorship activity in a businesslike manner. First, the agreements fail to set any goals or financial conditions that had to be met. The agreements fail to specify any minimum number of tournament entries by Constant or place a cap on Dr. DeMattia's potential liability for Constant's yearly expenses. Second, we find Dr. DeMattia's investigation into the potential profitability of the golf sponsorship to be lacking. Among other things, Dr. DeMattia testified that he had not calculated what Constant's earnings would have to be in order for

him to recognize a profit on his investment. He also failed to consult any attorneys or accountants regarding the sponsorship's potential profitability. Third, and even though the absence of a separate checking account and formal books and records does not always indicate that an activity was conducted in an unbusinesslike manner, see Engdahl v. Commissioner, 72 T.C. 659, 666 (1979), under the circumstances herein, we conclude that Dr. DeMattia's record-keeping system was not maintained for the purpose of tracking the business' profitability or conducting the activity in a businesslike manner. Dr. DeMattia's crude record-keeping system was not maintained for the purpose of cutting expenses, increasing profits, and evaluating the overall performance of the investment. See Glenn v. Commissioner, supra. Dr. DeMattia kept no record of the prize money available for each of the tournaments, the amount of money Constant won, or the amount of money to which petitioners were entitled. Compare Krause v. Commissioner, T.C. Memo. 1987-193 (taxpayers documented their son's tournament play to include tour names, cities, sponsoring club, and potential earnings). They did not maintain a budget for the activity. Dr. DeMattia's only concern appears to be the amounts which petitioners could deduct. Furthermore, Dr. DeMattia's failure to make any changes in the method of carrying on the activity in order to increase the activity's potential profitability is also evidence of a lack of

profit intent. Constant had only participated in four or five tournaments during 1992 through 1993, and had minimal tournament earnings in 1994 through 1996. What is particularly telling is Dr. DeMattia's reaction to Constant's new golf instructor position. Although Constant's new responsibilities impaired his ability to play in tournaments, and hence generate income from tournament winnings, Dr. DeMattia's only action in response thereto was to ensure that Constant's separate earnings were not covered by the sponsorship agreements. If there had been the requisite profit intent, all of the aforementioned facts should have inspired corrective action on Dr. DeMattia's part. This factor supports respondent's determinations.

2. Expertise of Petitioners or their Advisors

A taxpayer's expertise, research, and study of an activity, as well as his or her consultation with experts, may be indicative of a profit intent. Sec. 1.183-2(b)(2), Income Tax Regs.

Respondent argues that Dr. DeMattia lacked the requisite expertise to conduct the activity with a profit intent. In support, respondent cites the following facts: (1) Dr. DeMattia had never entered into any other sponsorship agreement with another professional athlete; (2) he had never acted as a sports agent; and (3) he had no formal training as a golf instructor.

Petitioners counter respondent's argument as follows: (1) Dr. DeMattia developed a certain level of expertise by, among other things, spending a significant amount of time reading publications on golfers and on the psychology of athletes; and (2) Dr. DeMattia sought out and obtained advice from various experts in related fields.

We believe that Dr. DeMattia did indeed take steps to educate himself in matters relating to the sponsorship and management of a professional athlete. We also believe that Dr. DeMattia sought out experts for the purpose of increasing his son's likelihood of entering the professional ranks. What we do not find credible is that the aforementioned actions were done by Dr. DeMattia with a bona fide objective of deriving a profit from the sponsorship activity. We believe that in cultivating expertise and making use of experts to support his son's golfing career Dr. DeMattia was acting as a parent would and not to make a profit for himself. Cf. Nova v. Commissioner, T.C. Memo. 1993-563. This factor supports respondent's determinations.

### 3. Time and Effort Spent in Conducting the Activity

The fact that a taxpayer devotes much of his or her personal time to an activity may indicate a profit intent, especially where the activity does not involve substantial personal or recreational aspects. Also, a taxpayer's withdrawal from another occupation to devote his or her time and effort to an activity

may indicate a profit motive.  <u>Burleson v. Commissioner</u>, T.C. Memo. 1983-570; sec. 1.183-2(b)(3), Income Tax Regs.

Respondent argues that any direct time and effort spent on the activity by Dr. DeMattia is indicative of his love and affection for his son and the sport of golf.  In support, respondent cites Dr. DeMattia's 20-year history of playing the game of golf and his history of playing the game with his son.

Petitioners argue that Dr. DeMattia's participation level indicates that he was engaged in the activity for profit. Dr. DeMattia testified that he spent a substantial amount of time, in excess of 30 hours a week, acting as his son's agent, coach, and manager.  Among other things, Dr. DeMattia testified: As Constant's coach, he would accompany his son to tournaments and lessons, discuss quality of game play, and make suggestions on how to improve Constant's play; as Constant's manager, he made Constant's travel arrangements, paid bills, and spent a significant amount of time reading varied publications which addressed all aspects of the professional golfer's game. Petitioners also cite Mr. DeMattia's retirement from his dental practice as evidence that he entered into the sponsorship activity with a profit motive.  Dr. DeMattia testified that the sponsorship of his son's golfing activity was a significant factor in his decision to sell his dental practice.

We find Dr. DeMattia's statements regarding the degree of effort and time spent on the activity not credible given Constant's extended period of illnesses and injuries, the limited number of tournament appearances, and his work as a golf instructor which preempted his ability to participate in tournaments or further develop his skills. Furthermore, we believe that the potential profitability from the sponsorship agreements was not a motivating factor in Dr. DeMattia's decision to retire from his dental practice. For example, Dr. DeMattia admitted that Government regulations and employee issues had rendered his day-to-day operations less enjoyable. Given this testimony, we find that Dr. DeMattia's retirement is not evidence of a profit motive towards the sponsorship agreement. This factor supports respondent's determinations.

4. Expectation That the Assets Will Appreciate in Value

"Profit" encompasses appreciation in the value of the assets. Sec. 1.183-2(b)(4), Income Tax Regs. Therefore, in evaluating a taxpayer's intent, we also look to the taxpayer's expectation that the assets used in the activity may appreciate in value.

Traditionally, the potential for asset appreciation is associated with land and other tangible assets. Here, petitioners argue that there is some potential for the value of the sponsorship agreements to increase. This argument is based

on petitioners' interpretation of the sponsorship agreements. Dr. DeMattia testified that both he and Constant contemplated that Dr. DeMattia's right to a portion of his son's earnings would continue indefinitely. Hence, any future success by Constant would inure to Dr. DeMattia. Respondent contends that there is no evidence which indicates that the sponsorship agreements will appreciate in value over time or that the sponsorship agreements cover Constant's future tournament earnings.

As an initial matter, the record does not support petitioners' interpretation of the sponsorship agreements. Constant testified that he had not given much thought to whether or not each sponsorship agreement entitled his father to Constant's future earnings. Moreover, each sponsorship agreement's coverage is limited to the corresponding "calendar year". As to Constant's transition into professional golf, the evidence does not establish that Constant was attaining any modicum of success and consequently that the sponsorship agreements had any inherent value. Constant testified that he played in three or four different tours[9] in 1992, with only one PGA tournament appearance at the 1992 Canadian Open. However, no evidence was presented on the numbers of individual tournaments

---

[9] A tour consists of a series of tournaments that are played throughout the country.

entered into in each tour or their respective potential money earnings. Constant testified that he had entered 10 to 15 events in 1996 through 1997, yet again petitioners presented no evidence regarding Constant's success or ranking in any of these events. The only evidence presented regarding Constant's performance is his testimony that he won between four and five tournaments over a 7-year period. This factor supports respondent's determinations.

### 5. Taxpayer's Success on Similar or Dissimilar Activities

Although an activity is unprofitable, the fact that a taxpayer has previously converted similar activities from unprofitable to profitable enterprises may show a profit intent with respect thereto. Sec. 1.183-2(b)(5), Income Tax Regs.

Respondent argues that Dr. DeMattia's lack of involvement in any similar activity, either in the capacity of a sponsor, agent, manager, or golf instructor, indicates a lack of profit motive. In addition, respondent argues that Dr. DeMattia's prior success in establishing and running a dental practice has no applicability to his success in this type of activity. Petitioners concede that Dr. DeMattia had no prior experience or success in carrying on a similar activity; however, petitioners portray Dr. DeMattia as an experienced businessman having a number of successful businesses during his career, including a

maintenance supply business, a rental real estate business, and a dental practice.

We accept petitioners' characterization of Dr. DeMattia as an astute businessman. However, given his prior experience in business dealings, we find that the manner in which he carried out this activity makes it less likely that he entered into the activity with a profit motive. This factor supports respondent's determinations.

### 6. An Activity's History of Income and/or Losses

A series of losses beyond the startup stage may be indicative of the absence of a profit motive unless such losses can be blamed on unforeseen or fortuitous circumstances beyond the taxpayer's control. Sec. 1.183-2(b)(6), Income Tax Regs.

Respondent argues that $265,656 in losses over 7 years weighs against a profit intent. Petitioners argue that losses in the first few years are not indicative of the activity's potential profitability, especially since Constant was either ill or injured for a significant portion of 1994 through 1996.

Assuming that there were unforeseen circumstances beyond petitioners' control, such as the series of illnesses and injuries suffered by Constant, petitioners failed to demonstrate a direct correlation between Constant's illnesses and injuries

and the activity's lack of profitability.[10]  We therefore reject petitioners' argument that the aforementioned circumstances should militate against any negative inference derived from the activity's pattern of losses.  In the record, we have information concerning the activity for a period of 7 years, and in each of those years petitioners incurred a substantial loss.  Given that petitioners never reported a profit on their sponsorship activity, and that the activity generated only $1,113 in income during the years in issue, we find that this factor supports respondent's determinations.  Cf. <u>Kimbrough v. Commissioner</u>, T.C. Memo. 1988-185 (taxpayer's income from his golfing activity increased steadily over the years involved in his case).

    7.  <u>Amounts of Occasional Profits</u>

    Occasional profits may indicate a profit motive.  However, the absence of profits is not determinative of a lack of profit motive.  Petitioners need only have an actual and honest profit objective.  Absent actual profits generated from the activity, an opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit.  Sec. 1.183-2(b)(7), Income Tax Regs.  "Profit" means economic profit independent of tax

---

[10]  We find it noteworthy that Constant's employment as a golf instructor apparently continued uninterrupted during this period.

consequences.  See <u>Campbell v. Commissioner</u>, 868 F.2d at 836;
<u>Ronnen v. Commissioner</u>, 90 T.C. at 92.

In 7 years, petitioners' sponsorship activity never generated a profit.  Of greater significance, we find it highly unlikely that petitioners would have recognized a substantial ultimate profit given Constant's position as a golf instructor and his lack of success in tournament play. This factor supports respondent's determinations.

### 8.  Financial Status of Taxpayer

Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit.  This is especially true where there are personal or recreational elements involved.  Sec. 1.183-2(b)(9), Income Tax Regs.  Respondent argues that petitioners have substantial income from other sources and that the losses generated by their sponsorship activity have given them substantial tax benefits for the last 7 years.

In 1992, absent the losses generated by the sponsorship activity, petitioners had taxable income of $61,244.  With the loss deductions, petitioners' 1992 taxable income was $9,783.  As to 1993, absent the losses generated by the sponsorship activity, petitioners had taxable income of $199,087.  With the loss deductions, petitioners' 1993 taxable income was $131,040.

Petitioners thereby received substantial tax benefits from the sponsorship activity.  This factor supports respondent's determinations.

9.  Elements of Personal Pleasure

Although the mere fact that a taxpayer derives personal pleasure from a particular activity does not mean that he or she lacks a profit intent with respect thereto, the presence of personal motives may indicate that the activity is not engaged in for profit.  This is especially true where there are recreational elements involved.  Sec. 1.183-2(b)(9), Income Tax Regs.

Respondent argues that the evidence establishes that Dr. DeMattia's primary purpose in entering into the sponsorship agreements was to assist Dr. DeMattia's son in pursuing a professional golf career and not an honest objective of making a profit within the meaning of section 183(a).  Respondent argues that both personal motives and a recreational element are present in this case.  As for personal motives, Dr. DeMattia derived some degree of personal satisfaction in trying to assist Constant in achieving his professional golfing goal, and the arrangement gave Dr. DeMattia the opportunity to spend additional time with both his father and his son.  As to the recreational element of the activity, Dr. DeMattia has been an avid golfer for more than 20 years and particularly enjoys playing golf with his son.

The presence of these facts in isolation is not dispositive. "[T]he fact that the taxpayer derives personal pleasure from engaging in the activity is not sufficient to cause the activity to be classified as not engaged in for profit if the activity is in fact engaged in for profit <u>as evidenced by other factors</u>". Sec. 1.183-2(b)(9), Income Tax Regs. (Emphasis added). However, in this case, other factors do not indicate the presence of a profit motive. Accordingly, this factor supports respondent's determinations.

<u>10. Conclusion</u>

Based on our careful review of the record, and our evaluation of the nine aforementioned factors, we conclude that petitioners did not conduct their sponsorship activity with an "actual and honest" objective of making a profit.[11]

We have considered all other arguments made by petitioners and found them to be either irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered for respondent as to the deficiencies in tax, and in accordance with respondent's</u>

---

[11] Having found that petitioners' golf sponsorship activity was an "activity not engaged in for profit" within the meaning of sec. 183, we need not address the issue of whether certain deductions disallowed by respondent are allowable.

concession for petitioners as to the penalty under section 6662.